BOYER, Chief Judge,
dissenting.
The aspect of this case which concerns me most is the almost flippant manner in which the state regards its own agreement. For any citizen or body corporate to disavow its own actions is always a disappointment, but for the sovereign it is even more so. Of all parties which should be dependable it should be the state. Being a composite of the entire citizenry ■ the state, functioning through its officers, agents and employees holds a unique position of trust which should be an example for all to follow. The state, apart from its functionaries, has no eyes, ears, nose nor other vital organs. It is for that reason that the word of a functionary should very nearly be gospel.
The state now argues, blithely, that the statute which was relied upon by the assistant state attorney, defendant and judge of the trial court alike has no application. Perhaps not, but that certainly was not the position taken by the state in the trial court! There the state not only agreed as to applicability, but agreed to comply. Now it cavalierly takes an opposite position.
How may a citizen, it may be rhetorically asked, be expected to act responsibly and abide his sacred word when the all powerful sovereign sets no such example?
*766 I am disturbed too that any action of a trial court be specifically conditioned, as urged and alleged by the state sub judice, upon consent and concurrence by a vice squad. A vice squad is an extremely important arm of government which is entitled to every proper respect. However, its function is to investigate, and where appropriate arrest, making its testimony and evidence available according to law in appropriate proceedings. It should not, however, fill the role of advisor to a judge whose oath and duties require impartiality, not only actually but apparent.
The facts of this case reveal without contradiction that in reliance upon the statute, and in compliance with the permit and mandate thereof, the parties through their respective counsel agreed, after being fully informed of all relevant facts, that the charge lodged against the defendant in Du-val County be transferred to Hillsborough County to be simultaneously disposed of with another charge pending against the defendant there. The state was then and there fully aware of the charge pending against the defendant in Hillsborough County and that there had been negotiations between the defendant’s attorney and the assistant state attorney in Hillsborough County. The sole reason now appearing for the state seeking to renege on its agreement to the transfer is the allegation that it has discovered that the defendant will probably “get no time” in Hillsborough County. (Inferentially 'reflecting that it has already been determined, notwithstanding that there has been no trial, that he will get time in Duval County.) If “time” was a consideration then the state should have appraised itself prior to making the agreement for transfer. In any event, it should not be, and is not, the prerogative of the vice squad, upon whose urging it is now alleged that the state seeks to dishonor its agreement, to determine whether or not defendant gets “time”. The wording of the statute, which was conceded by the parties in the trial court to be applicable, is mandatory. When venue is changed from one circuit to another the court from whence transferred loses jurisdiction except for the purpose of entering such orders as may be necessary to effectuate the transfer. (See Boyer & Barton, Writ of Prohibition in Florida Since 1951, XXIX University of Florida Law Review 241).
The agreement of the parties as to applicability of the statute and the agreement to transfer pursuant to the statute is tantamount to a change of venue and therefore, in my view, the Circuit Court in and for Duval County, Florida no longer has jurisdiction. I would accordingly make the writ of prohibition absolute and grant the writ of mandamus prayed for.